MOORE, J,
dissents.
IH dissent. The majority has taken so many liberties with the law and with the trial court record that it is hard to know where to begin. The burning motive behind the majority’s labored and opaque opinion seems to be moral indignation that Loutre Land might possibly acquire 14 to 18 acres of land for which it did not pay. To avoid this perceived inequity, the majority has revised the law and disregarded the factual findings.
La. C.C. art. 794 regulates boundary actions, such as this case. It states the simple rule, “When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles.” The district court found, and the record fully supports, that the Morgan Estate possessed the disputed tract continuously, without interruption, peaceably, publicly and unequivocally for well over 30 years. As a result, it owned the disputed tract at the time of its cash deed to Loutre.
In addition to this clear Civil Code mandate, the caselaw is settled that “ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title.” Brown v. Wood, 451 So.2d 569 (La.App. 2 Cir.), writ denied, 452 So.2d 1176 (1984); McIlwain v. Manville Forest Products Corp., 499 So.2d 1138 (La.App. 2 Cir.1986). Contrary to the majority’s suggestion, acquisitive prescription actually preserves the stability of titles. Board of Com’rs v. Elmer, 268 So.2d 274 (La.App. 4 Cir.), writ ref'd, 263 La. 613, 268 So.2d 675 (1974).
To circumvent this definitive principle, the majority has woven a bizarre and unprecedented theory based on the public records doctrine. |2 However, there is nothing in the text of the new La. C.C. art. 3338 or in the long jurisprudence following McDuffie v. Walker, supra, to support the vain attempt to excise Art. 794 from the law.
Even if the public records doctrine somehow trumped acquisitive prescription, it would not do so in this case. First, the cash deed from the Morgan Estate to Lou-tre conveyed 100 acres “more or less, * ⅜ * together ¶⅝⅛⅛ all rights or prescriptions, whether acquisitive or liberative, to which said vendor may be entitled,” evidencing a clear intent by both seller and buyer to convey any portion not strictly described. Tracts far larger than 18 acres have been conveyed by acquisitive title. Broussard v. Guidry, 127 La. 708, 53 So. 964 (1911) (over 84 acres). Second, La. C.C. art. 793 provides, “When the parties trace their titles to a common author preference shall be given to the more ancient title.” Loutre acquired title by deed dated July 29 and filed on August 5, 2002; Roberts acquired title by quitclaim dated January 29 and filed February 27, 2003. Lou-tre’s title is obviously “more ancient.”
The concurring opinion quotes the testimony of Loutre’s forester, H.E. Perry, to show that Loutre was fully aware of the “windfall” of an additional 14 to 18 acres; ergo, it deserved to lose this case. Despite the appearance of inequity, Loutre’s good faith or bad faith at the time of the deed is irrelevant. Under La. C.C. art. 3486, “Ownership and other real rights in im-movables may be acquired by the prescription of thirty years without the need of just title or possession in good faith.” (Emphasis added.)
IsPerplexingly, the majority makes much of Roberts’s quitclaim deed, but the law is settled that such a nonwarranty declaration can convey only whatever interest the *493 seller has in the property. Scurlock Oil Co. v. Getty Oil Co., 294 So.2d 810 (La.1974). As the Morgan Estate had conveyed 100 acres more or less, plus prescriptive rights, six months earlier, it obviously could not convey them to Roberts. Pilcher v. Paulk, 228 So.2d 663 (La.App. 8 Cir.1969). Indeed, the fact that Roberts requested only a quitclaim deed shows that he was aware of a potential title problem. The late Mrs. Morgan’s attorney, Daniel Wirtz, testified that in his view, the estate no longer owned the disputed tract, but because of the insistence of Roberts’s counsel, he executed the quitclaim deed. The trial court fully credited Mr. Wirtz’s testimony; for reasons never explained, the majority now dismisses it as “unclear.”
This point leads to the majority’s coup de grace, a reversal of the district court’s credibility calls and factual findings without one mention of the concept of manifest error. Where is the manifest error in the district court’s findings of undisturbed possession, the passage of over 30 years, the interpretation of Loutre’s cash deed, the reservations of the estate’s attorney, and the interpretation of Roberts’s quitclaim? The majority does not even favor us with a finding of legal error, but instead drapes a new and fantastic theory over the whole case. This is not the proper role of the intermediate court.
There is no manifest error in the district court’s factual findings and no legal error in its conclusions. I would affirm.