LOTTINGER, Judge.
The plaintiff filed this suit against his former wife, alleging that they had been divorced on November 5, 1963, by judgment of the Circuit Court of Montgomery County, Maryland. He further alleged that during their marriage he and the defendant had acquired immovable property which he described in his petition, and went on to allege that he and his wife had executed a property settlement agreement under date of February 21, 1963, a duplicate original of which he attached to his petition. He alleged that in the property settlement agreement the defendant had relinquished all of her right, title and interest in and to his property, and had further agreed that *736 she would execute a deed and release of claim or other instrument necessary to effect the conveyance to him. He alleged that he had requested of her that she transfer her interest in the property described in his petition to him, and that :she had refused to do so. Pleading alternatively, the petitioner urged that in event that the Court should find that the agreement between him and the defendant unenforceable or void, the property they would own in indivisión, and described in his petition, should be sold to effect a partition between them. The petitioner prayed that the Court find the property settlement agreement was valid and enforceable and that the Court specifically enforce the agreement and decree that the defendant’s former community interest in the property was divested from her and vested exclusively in him.
The defendant answered the petition admitting that she and her husband had been divorced and that the property described in the petition was purchased during the time that they were married, however she denied that the document attached to the plaintiff’s petition was a property settlement agreement. She denied that by that agreement she had relinquished any of her undivided one-half interest in either the community property described in the plaintiff’s petition or to any other property belonging tO' the community of acquets and gains which existed between her and her former husband prior to the divorce. She urged that the property described in the plaintiff’s petition was property belonging to the community of .acquets and gains existing between her and her husband in which she had an undivided one-half interest and that therefore she was the owner of an undivided one-half interest in the property and that she had not transferred her interest in this property. She alleged that in addition to the property described in the petition, there were other items of movable property held by the petitioner which belonged to the community of acquets and gains and that she was entitled to her undivided one-half interest thereto. She asked for an accounting to disclose the items that petitioner held and she propounded interrogatories to him asking him to disclose such items which he held that had belonged to the community of acquets and gains.
The plaintiff filed an exception of prematurity and of no right of action to the defendant’s reconventional demand and a motion to suppress the interrogatories propounded by her. The Trial Court overruled the exceptions of prematurity and of no right of action and denied the motion to suppress the interrogatories, and ordered the plaintiff to answer the interrogatories.
The plaintiff filed an answer to the reconventional demand denying that the defendant had not transferred her interest in the community property described in his petition, and further denying that she was a co-owner in indivisión of the property which formerly belonged to the community of acquets and gains and prayed that the Court decree that the property settlement agreement was governed by the laws of Maryland and binding upon both the plaintiff and the defendant.
The plaintiff answered the interrogatories, his answers disclosing that he held several items of movable property which formerly belonged to the community of acquets and gains which had existed between him and the defendant at the time of the divorce.
Thereafter the defendant filed a supplemental and amending reconventional demand in which she listed those items of movable property held by the petitioner, and alleged that she had an undivided one-half interest in those items, and asked that she be recognized as the owner of said one undivided one-half interest.
After a trial on the merits, at which no oral testimony was introduced, the Trial Court rendered judgment decreeing that the property settlement agreement entered *737 into between the parties was valid and enforceable and ordering that the agreement be specifically performed. The judgment went on to decree that the defendant, within fifteen days from the signing of the judgment, execute and deliver to the plaintiff a quit claim deed transferring and conveying to the plaintiff all of the defendant’s right, title and interest in and to the two certain lots of ground in the Parish of East Baton Rouge described in the plaintiff’s petition. The judgment further ordered that in default of the execution and delivery of the quit claim deed by the defendant that the judgment would have the operation and legal effect of such conveyance and transfer so as to vest in the plaintiff all of defendant’s right, title and interest in and to the described property. The judgment further rejected the defendant’s reconventional demand and ordered that the defendant pay all costs. It is from this judgment that the defendant has appealed.
In his written reasons for judgment, the Trial Judge recited the facts, noted that the parties were living together in East Baton Rouge Parish and subsequently the defendant moved to the State of Maryland where she lived for some three to three and one-half years. The plaintiff continued to reside in East Baton Rouge Parish, and during the early part of 1963, the defendant, through her attorney, had corresponded with the plaintiff in an attempt to work out a property settlement agreement, although the parties were still married at that time. He noted that the net result of this correspondence was the “property settlement agreement” which was prepared in the State of Maryland and forwarded to the plaintiff in Baton Rouge, where he signed the document. He noted that the document was then sent back to Maryland where it was executed on Nevember 27, 1963, by the defendant. The document was then filed as an exhibit in the divorce case in Maryland. The first several paragraphs of the agreement referred to custody and child support, as well as the right of visitation by.the husband. There were also agreements between the parties relative to endowment insurance policies for the benefit of the parties’ son and a waiver by the wife of all future claims for the wife’s support and maintenance.
Paragraph 5 of the agreement reads as follows:
“The wife hereby relinquishes all statutory of common law rights or interest which she now has or may in the future have in or to any of the husband’s property, whether real, personal or mixed, and wheresoever situated, that he now has or may hereinafter own or acquire, and she further agrees that she will, upon request, execute and deliver any further assurances that may be required with respect to her release of such interest.”
The paragraph goes on to state that the husband likewise relinquishes and releases such claims that he may have in the property of his wife. It does not state or describe in any manner the property to which the parties have reference. Paragraph 6 of the agreement states that the husband and wife shall, upon demand, execute and deliver any and all deeds, releases, quit claims, waivers and other instruments and writings which may, from time to time, prove necessary or convenient.
The Trial Judge stated, and we believe correctly, that the question presented in this case is whether or not the so called property settlement agreement is enforceable in the State of Louisiana. In his written reasons for judgment, the Trial Judge stated that the laws of the State of Maryland permit a husband and wife to contract prior to divorce or judicial separation. He also said that if the contract in question is a Maryland contract, then the question arises as to whether the laws of the State of Maryland should be applied to the contract in order to give it validity or should the laws of the State of Louisiana be applied to prevent a husband and wife from contracting. The Trial *738 Judge stated that there is no doubt that should this agreement be interpreted to amount to a conveyance of property in Louisiana, that the laws of the State of Louisiana apply and the contract would not be valid. He found that in view of the fact that no1 property was described in the agreement indicated to him that what the parties entered into' was an agreement to settle the community property. Of course, the purpose of this suit is an attempt by the parties to give the agreement in question the force and effect of a conveyance of real property in Louisiana.
The appellant assigned the following specifications of error:
1. The Trial Court erred in deciding that the document labeled Property Settlement Agreement is a valid contract.
2. The Court erred in deciding that the document labeled Property Settlement Agreement affected the property situated within this state.
3. The Court erred in interpreting the document labeled Property Settlement Agreement as an agreement by the appellant to transfer to appellee her interest in the community property.
4. The Court erred in rejecting appellant’s reconventional demand against the appellee for her half of the community property held by the appellee at the time of the divorce.
We believe that the subject matter of this case initially requires an inquiry into the capacity of the parties to contract with each other. It is admitted by all parties and the record reflects that at the time that the agreement in question was executed, the plaintiff and defendant were still married to each other, although living separate and apart and in different states. The agreement is dated February 21, 1963, and the parties were not divorced until November 5, 1963. Of course, the general principle of law applicable to contracts between husband and wife is contained in Article 1790 of the Revised Civil Code which provides in part:
“Besides the general incapacity which persons of certain descriptions are under, there are others applicable only to certain contracts, either in relation to the parties, such as a husband and wife * * * whose contracts with each other are forbidden.”
Article 2446 of the Revised Civil Code does provide for certain exceptions to the prohibition set forth in Article 1790 and those are as follows :
“A contract of sale, between husband and wife, can take place only in the three following cases:
1. When one of the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights.
2. When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated.
3. When the wife makes a transfer of property to her husband, in payment of a sum promised to him as a dowry. * * * ”
The agreement in question does not fall within the purview of Article 2446 because, 1. the parties were not judicially separated, 2. the record contains no indication that there were any dotal funds of the wife alienated, or 3. that the husband was ever promised dotal property. This agreement is concerned solely with community property acquired by the parties during the term of their marriage, which marriage was *739 still in existence at the time that the agreement was executed by the parties.
Counsel for appellee urges and the Trial Judge found that the contract in question was a Maryland contract, and the Trial Judge likewise found that under the law of the State of Maryland, the parties were free to contract with each other even though they were not divorced or judicially separated. While the Trial Judge’s statement relative to the law of Maryland with reference to the capability of married persons to contract may well be correct, there still remains the very important principle of law set forth in Article 491 of the Revised Civil Code which provides that persons who reside out of this State cannot dispose of the property which they possess here in a manner different from that prescribed by the laws of this state. This rule is subject to a further exception contained in Article 10 of the Revised Civil Code which does not apply in this instance, and which provides that a citizen of another state may dispose by will or testament, or any other act causa mortis made out of this state of his movable property situated in this state. This exception of course does not apply as the subject of this lawsuit is immovable property, and the disposition which was purportedly made of the property was by contract, and not by causa mortis. Therefore, briefly stated, we are faced with a situation where the law especially prohibits contracts between a husband and wife, with the instant agreement not falling within the exceptions to the general rule, and the rule or law to the effect that persons who reside out of the state cannot dispose of their immovable property in a manner different from that provided by the laws of this state. The parties in this instance, as aforesaid, were married and not judicially separated, and they proceeded to contract purportedly with reference to immovable property situated in this state. The conclusion that the contract is void and unenforceable must certainly be reached, unless it can be shown that the agreement is not subject to the laws of this state for some other reason.
Counsel for appellee, in support of his position, cites to us the case of Sheard v. Green, 219 La. 199, 52 So.2d 714 (1951) as authority for the proposition that even though under the law of Louisiana such a contract as the one involved in this suit would be absolutely null and void if entered into prior to judicial separation or divorce, it would be binding if it had been incorporated in a judgment of divorce or entered into subsequent to the dissolution of the marriage community. The facts of that case were that plaintiff and defendant were married on January 2, 1929 in Texas. Shortly thereafter they moved to Louisiana where they continued to live until 1945, at which time the plaintiff, because of the defendant’s actions, was forced to leave the matrimonial domicile. She moved to Arkansas, established the necessary residence, and filed suit for divorce, which was granted in October of 1945. Prior to the granting of the divorce, plaintiff and defendant entered into a contract of agreement which was the subject of that case, whereby plaintiff agreed to relinquish all her rights for maintenance, alimony or dowry and all of her claims against the defendant in consideration of about $950.00 in War Bonds, an automobile and the sum of $2,000.00 together with $150.00 per month alimony, beginning in November of 1945, and continuing until the plaintiff remarried. The plaintiff instituted that suit averring that the agreement was invalid and should be set aside because of the fraud practiced on her by the defendant, in that he told her at the time of the agreement that the community was worth approximately $5,000.00, whereas, she now alleged in her suit that she was informed that it was worth more than $25,000.00. The defendant filed an exception of no cause or right of action which was sustained by the Trial Judge. The defendant’s exception of no cause or right of action was based on the contention that the so called agreement or contract sued on by the plaintiff was incorporated in and made *740 part of the judgment of divorce of the Arkansas Court, and therefore could not be collaterally attacked in that proceeding. The Supreme Court quoted the general law contained in 27 C.J.S. Divorce § 334, p. 1300, Note 17, which reads as follows:
“A separation agreement embodied in a foreign divorce decree may not be attacked without making a direct attack on the decree.”
The Supreme Court went on to say about the contract in the Sheard case:
"Under our law, such a contract as the one involved in this suit would be absolutely null and void if entered into prior to judicial separation or divorce. Civil Code Articles 1790, 2446; Guillot v. Guillot, 141 La. 86, 74 So. 704; Marks v. Loewenberg, 143 La. 196, 78 So. 444, Russo v. Russo, 205 La. 852, 18 So.2d 318. The only way such an agreement under our law is binding is to have it incorporated in the judgment of divorce or have it entered into subsequent to the dissolution of the marriage community. The attack on the contract in this case under Louisiana law is an attack on the judgment of divorce and the only question that this court can consider with respect to a divorce decree of a sister state is the jurisdictional requirement of domicile. * * *»
The Supreme Court then went on to affirm the District Court’s action in sustaining the exception of no cause or right of action.
While the Sheard case and the instant case appear to be quite similar in factual situations, we notice several disparities and distinctions, only one of which is of any consequence here. In the Sheard case the property settlement agreement entered into between the parties was incorporated in and made part of the judgment of divorce of the Arkansas Court. There is filed in the record herein as plaintiff’s Exhibit No. 3 a certified copy of the decree of divorce rendered on November 5, 1963 by the Circuit Court for Montgomery County, Maryland. That decree grants to the defendant herein a divorce a vinculo matrimonii from the defendant and then goes on to provide that the defendant is granted the custody of the child born to the parties, subject to reasonable visitation rights in favor of the father, and provides for payments by the plaintiff herein to the defendant herein in the amount of $125.00 per month for the support of the said child during specific months of the year, in the sum of $100.00 per month during other months of the year. That is all that is contained in the judgment. No mention whatsoever is made of the agreement which forms the basis for this lawsuit. We note that the agreement which is the subject of this suit deals with several subjects in addition to the purported disposition of the property between the parties. Among these subjects touched upon by this agreement is the question of custody of the minor child, the amount of child support to be paid by the plaintiff herein to the defendant herein for the support of said child during specific months during the year, and the amount to be paid by him for the support of the child during other months. As a matter of fact, the principal portion of the agreement not embodied in the judgment of the Maryland Court is that portion of the agreement which is in contest here, namely that which purports to settle and dispose of the community property. We might say that considering the number of subjects touched upon in the agreement, and the number of items in addition to the divorce touched upon in the divorce judgment, that portion of the agreement relative to disposition of the property between the parties is conspicuous by its absence from the judgment.
Accordingly, we clearly distinguish the instant case from Sheard v. Green, supra, on the basis that in the Sheard case the agreement between the parties was incorporated in and made part of the judgment of divorce of the Arkansas Court, whereas in this case there was no such incorporation in the judgment of the agree *741 ment between the parties with reference to the property. Accordingly, the contract becomes simply a contract between a husband and a wife not judicially separated or divorced and therefore a contract expressly prohibited by Article 1790 of the Revised Civil Code, and a contract which does not fall within the three exceptions of the general rule set out in Article 2446 of the Revised Civil Code. We can therefore only conclude that the agreement between the parties sought to be enforced by the plaintiff herein is void and unenforceable by reason of its contravention of the express prohibition contained in the laws of this state
In his petition, the plaintiff herein alleged and prayed in the alternative that should it be decided that the agreement between the parties was void and unenforceable that there be judgment in his favor and against the defendant decreeing that the property described in the petition be partitioned by licitation, and ordering that a sale of the property be conducted at a public auction after advertisement, etc., and ordering that plaintiff be reimbursed for sums expended by him for taxes and preservation of the property. The defendant denied these allegations. The Trial Court heard no evidence with reference to partitioning of the property, either by lic-itation or in kind. The question of partition was not considered by us in this appeal. This cause will therefore be remanded to the Trial Court so that it may make proper disposition of the plaintiff’s alternative prayer.
Accordingly, the judgment of the Trial Court is reversed, and this cause is remanded to that Court for further proceedings, with the appellee to pay all costs of this appeal.
Judgment reversed and remanded.
LEAR, J., recused.