358 So.2d 649 (1978)
Lynden Butler CLAY
v.
Louis H. CLAY, Jr.
No. 11768.
Court of Appeal of Louisiana, First Circuit.
February 13, 1978.
*650 Max Nathan, Jr., for plaintiff-appellee.
Roger I. Dallam, Gretna, for defendant-appellant.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Defendant Louis H. Clay, Jr. (Appellant), appeals from judgment in favor of his major daughter Lynden Butler Clay (Appellee), decreeing Appellant liable for Appellee's past and future college expenses pursuant to a community settlement agreement between Appellant and his former wife, Lynden Howell Clay (mother of Appellee), which agreement was approved and ratified by Appellant and his former spouse and made part of a Nevada divorce decree obtained by Appellant. We affirm.
Appellant asserts the following defenses: (1) The agreements in question were not final but merely proposed agreements dependent upon conditions which were never fulfilled; (2) Appellee was not a party to the Nevada proceedings and is therefore without interest to assert any rights thereunder; (3) Assuming Appellee has an interest to assert, Appellee has failed to show the Nevada decree is entitled to full faith and credit and also has failed to invoke the proper procedure to have the decree recognized as enforceable in this state; (4) Appellee has no rights as beneficiary of a stipulation pour autrui under the agreements which were proposed only, no final agreement having ever been reached by Appellant and his former spouse; and, (5) Assuming Appellee may sue on the agreements as beneficiary of a stipulation pour autrui, Appellee has failed to prove her claim to the degree of certainty required by law.
On September 24, 1973, Appellant filed suit for divorce against his then wife Lynden Howell Clay, in Clark County, Nevada. The petition alleges Appellant's bona fide residence in Nevada for more than six weeks prior to institution of suit. It also recites that there are four children of the marriage including Lynden Butler Clay, Appellee herein, who is recited to be 18 years of age. It is further averred that all property rights have been settled between the parties by virtue of an Interim Separation Agreement and Proposed Final Community Property Settlement Agreement between the parties, dated August 10, 1973, copies of which are attached to Appellant's petition for divorce. The petition expressly recites that the agreements settle all property rights of the parties including maintenance and support of the wife and care, custody and support of the children. Appellant acknowledged that the agreements were fair, just and equitable and requested that they be allowed, confirmed, ratified and approved by the court. The Interim Agreement was signed by both parties under private signature and duly acknowledged by each before a Notary Public in New Orleans, Louisiana. The Proposed Final Community Property Settlement is written, undated and unsigned but is initialed by both parties.
On September 24, 1973, pursuant to Appellant's petition and annexed documents, the Nevada Court rendered judgment in favor of Appellant granting an absolute divorce between the parties. The judgment also approved the agreements between the parties, ordered that said agreements survive the decree and declared each party obligated to comply with the terms of the agreements.
The Interim Agreement provided for interim alimony, custody of the children and visitation rights for Appellant. It also stated that it would remain effective for one year or until the date of sale of certain Louisiana property (apparently the family home), whichever event came first. It further recited that the parties would enter into a final agreement.
The Proposed Final Agreement obligates Appellant to: Transfer the family home to his former wife; pay alimony for those children living with their mother; pay medical bills incurred by the children; and pay educational costs for all four children. In consideration, Mrs. Clay agreed to relinquish *651 all her rights in the remaining community property.
Following the divorce, Appellee entered college and Appellant paid all of her college expenses until July, 1975, at which time Appellant discontinued his support.
The trial court held Appellee was entitled to sue under the Nevada decree which he found entitled to full faith and credit in this state. The trial court rejected Appellant's contentions that Appellee could not sue on the Nevada judgment in her own name and that Appellee failed to lay the proper foundation for recognition and enforcement of the judgment in this state, and awarded Appellee judgment in the sum of $7,440.29 for educational expenses incurred by Appellee since educational support was discontinued by Appellant. Lastly, the trial court ordered Appellant to pay for Appellee's future tuition, books, incidental educational expenses plus a monthly allowance of $150.00.
For reasons hereinafter set forth, we find the agreements in question contain a contractual stipulation pour autrui in favor of Appellee which Appellee is entitled to enforce in her own right. We also find Appellee's rights to be totally independent of the Nevada decree for which reason we are not called upon to determine the numerous issues raised by Appellant concerning the rights of Appellee under the Nevada judgment.
We find no merit in Appellant's contention that the Proposed Final Agreement never came into existence because its contingent terms were never fulfilled. The record is clear that the agreement was entered into in contemplation of the divorce and that it has been lived up to and executed by the parties thereto. The record leaves no doubt that since rendition of the Nevada divorce, Appellant and his former wife have both considered the agreements final and binding. Both have lived up to the terms of the instruments. In compliance therewith, Appellant has paid alimony to his children as stipulated. Appellant has paid and continues to pay college expenses of another daughter. For a period of about 2 years Appellant paid Appellee's expenses, although he testified he did so purely on a voluntary basis. There is nothing of record to indicate that either Appellant or his former spouse consider that there is anything further to be determined as regards settlement of the community previously existing between them. Appellant has never requested his former wife to execute any further agreement to settle their community affairs. The averments in Appellant's Nevada petition in no way suggest the necessity of further agreement concerning the community. While Appellant's position in the Nevada proceedings does not necessarily preclude his taking a contrary position herein, the former position is relevant in determining Appellant's intent to be finally bound by the agreements. Considering the record in its entirety, we unhesitatingly conclude that the parties have mutually ratified the agreements by their actions subsequent to their divorce.
It is conceded that the validity of the agreements must be determined in the light of Louisiana law. Such agreements between husband and wife are nullities under our law in that they violate the provisions of La.C.C. Articles 1790 and 2329, which prohibit alteration of the matrimonial regime during marriage. Nevertheless, our jurisprudence holds that such agreements, although null, may be ratified by the parties subsequent to divorce. Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967); Fisher v. Fisher, 261 So.2d 85 (La.App. 3rd Cir. 1972).
We find that the ratified contractual agreements contain a stipulation pour autrui in favor of Appellee pursuant to La. C.C. Articles 1890 and 1902, upon which Appellee may sue in her own right.
In proof of her claim, Appellee introduced check stubs showing payment of tuition, books, sorority dues and payment for room and board in the home of her grandmother. She also produced a few receipts. Appellant vigorously attacks such proof for lack of receipts and also for failure of Appellee to produce her grandmother as a *652 witness to verify the sum of $85.00 monthly allegedly paid the grandmother for room and board. Appellee also introduced evidence to show depletion of a savings account between the time her support payments were discontinued and the date of trial, said withdrawals aggregating approximately $4,000.00. Appellee also established that she was compelled to accept part time employment to continue her college education. In its discretion, the trial court awarded Appellee $7,440.29 for past due support, including the sum of $150.00 monthly as an allowance and ordered continued payment of said allowance in addition to Appellee's future expenses for books, tuition, room and board. We find ample evidence of record to support his finding and affirm the amounts awarded.
The judgment is affirmed at Appellant's cost.
Affirmed.